UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-60022-CR-BLOOM

UNITED STATES OF AMERICA

v.

ESTEBAN SANTIAGO-RUIZ,

Defendant.
_____/

## STIPULATED STATEMENT OF FACTS

If this matter were to proceed to trial, the government would introduce witness testimony, documentary evidence, physical evidence, forensic evidence, video surveillance footage and other evidence, proving beyond a reasonable doubt, all of the following facts:

1.      On or about January 6, 2017, in Broward County, in the Southern District of Florida, defendant ESTEBAN SANTIAGO-RUIZ (SANTIAGO) committed the offenses of Violence at an International Airport Causing Death, in violation of Title 18, United States Code, Section 37(a)(1) (as charged in Counts 1 through 5 of the Indictment) and Violence at an International Airport Causing Serious Bodily Injury, in violation of Title 18, United States Code, Section 37(a)(1) (as charged in Counts 6 through 11 of the Indictment).

2.      Fort Lauderdale-Hollywood International Airport (FLL) was an airport serving international civil aviation located in Broward County, in the Southern District of Florida.   On January 3, 2017, SANTIAGO purchased a one-way airline ticket from Anchorage, Alaska, through Minneapolis, Minnesota, to Fort Lauderdale, Florida.   On or about January 5, 2017, SANTIAGO used the one-way ticket to board a Delta Airlines flight from Anchorage, Alaska, with a layover in Minneapolis, Minnesota, which ultimately landed at FLL.   SANTIAGO took no carry-on

luggage and checked no baggage except for a hard-sided firearm case, which contained a Walther 9mm pistol, Model PPC, Serial No. AJ7298, and two magazines loaded with ammunition.

3.      After deplaning at FLL on January 6, 2017, SANTIAGO walked to the baggage area in Terminal 2, where he claimed the gun case from a Delta Airlines employee.   He then walked to a public men's room at the west side of Terminal 2, while concealing the gun case behind a camouflage jacket that he was holding in his hands.   In a men's room stall, SANTIAGO took the pistol from its case and loaded a magazine into the pistol.   He threw away in the trash a shirt, gloves, hat, and the lock with keys and luggage tag that had been attached to the pistol case.   He left behind in the stall, the empty pistol case.   He then concealed the firearm in his waistband and walked out to the baggage area, heading east toward the far end of the terminal.

4.      At approximately 12:52 p.m., SANTIAGO walked out of the Terminal 2 men's room into an area that was crowded with newly arrived passengers retrieving their luggage.   As he walked eastwardly beside the baggage carousels, SANTIAGO pulled out the firearm from his waistband, took aim, and fired several rounds of ammunition at the passengers who were standing in the terminal, aiming at their heads and bodies.   At one point, SANTIAGO ran out of ammunition and reloaded a second magazine into the firearm.   He then fired all the rounds in the second magazine at his victims.   After shooting all of his ammunition, SANTIAGO dropped the pistol on the floor, in lock-back position, meaning that the gun was out of ammunition, and he dropped to the floor.   SANTIAGO did not attempt to escape and was arrested by Broward Sheriff's Office (BSO) deputies.   Evidence recovered at the crime scene included fifteen shell casings that had been ejected from SANTAGO's firearm.

5.      During the attack, SANTIAGO shot and killed the following persons:   Mary

2

Louise Amzibel, age 69; Michael John Oehme, age 56; Olga M. Woltering, age 84; Shirley Wells Timmons, age 70; and Terry Michael Andres, age 62.   The deaths of each of those persons was directly caused by the gunshot wounds inflicted upon them by SANTIAGO.

6.      Injured in the attack were persons identified in the Indictment as J.S., B.G., C.S.T., C.P., K.K.O., and E.A.   Those persons suffered serious bodily injuries, which were directly caused by the gunshot wounds inflicted upon them by SANTIAGO.   J.S. suffered a gunshot wound through her shoulder.   B.G. suffered a gunshot wound through his left arm that resulted in a life-threatening arterial injury requiring emergency surgery in order to stem the bleeding and to transplant a vein from his leg in order to effect a repair of that artery.   C.S.T. suffered a gunshot wound to the head resulting in the loss of his left eye and the excision of part of his skull in order to remove damaged brain tissue.   C.P. suffered a gunshot wound to his left wrist, requiring surgery to insert metal parts in order to reconstruct the bones in that wrist.   K.K.O. suffered a gunshot wound to the neck, which lodged in her upper back, causing fractures to two vertebrae.   E.A. was shot in the face and required multiple surgeries in order to reconstruct his sinuses, palate and jaw with metal parts.

7.      Prior to the shooting, SANTIAGO engaged in the following acts in preparation for the armed attack:

A.      On or about December 29, 2016, SANTIAGO purchased a hard-sided pistol case from Cabela's sporting goods store in Anchorage after discussing with a manager there the specific type of case that he needed in order to check a gun onto a commercial airplane.

B.      On or about January 3, 2017, SANTIAGO used his Samsung smartphone to access a map of the layout of Tom Bradley LAX Airport.

C.     On or about January 3, 2017, SANTIAGO purchased a one-way airline ticket scheduled to depart Anchorage via Minneapolis, Minnesota on January 5, 2017, and arrive at FLL on January 6, 2017.

D.     In or around early January 2017, before his departure to Ft. Lauderdale, SANTIAGO threw out some of his possessions, including personal papers and clothing, which were recovered from the dumpster outside his motel.   One scratch piece of paper appeared to be a checklist, which included a notation to "clean" the laptop.

E.     On or about January 5, 2017, SANTIAGO purchased a new Seagate computer hard drive from Walmart, and replaced his Toshiba laptop computer's hard drive with the new Seagate hard drive, which contained no data.   SANTIAGO left the Toshiba laptop with the new blank hard drive in his motel pod.

F.     On or about January 5, 2017, SANTIAGO went to the Anchorage airport with no luggage except his gun case containing the Walther 9-mm pistol and two loaded magazines, which he checked with the airline for his flights to Minneapolis and Fort Lauderdale.

G.     On or about January 5, 2017, SANTIAGO boarded an airplane and flew from Anchorage, through Minneapolis, and arrived at FLL.

H.     On or about January 6, 2017, SANTIAGO's flight arrived at FLL, where he deplaned and walked to the Terminal 2 baggage area on the ground floor.   Then, SANTIAGO retrieved the gun case from the airline's baggage office, walked to the Terminal 2 west-side men's restroom and entered a stall.

I.     While in the men's room stall, SANTIAGO loaded the firearm.   He also threw away in the trash a shirt, gloves, hat, and the lock with keys and luggage tag, which had

4

been attached to the pistol case.  He left behind, in the stall, the empty pistol case.  He then concealed the firearm in his waistband and walked out to the baggage area, heading east to the far end of the terminal.

J.       SANTIAGO then walked between carousels 2 and 3, pulling the firearm from his waistband and firing at victims' heads and bodies fifteen times for approximately two minutes.

8.       After receiving Miranda warnings, SANTIAGO agreed to be interviewed by BSO and FBI personnel.   During the interview, SANTIAGO admitted that he had carried out the attack, and that he had purchased a one-way airline ticket for travel from Anchorage to Fort Lauderdale via Minneapolis.   SANTIAGO also admitted that his only checked baggage consisted of a box containing a Walther 9-millimeter semi-automatic pistol and two magazines. SANTIAGO also said that, upon his arrival at FLL, he claimed the box and took it into a men's restroom in Terminal 2, near baggage claim.   He recounted how he entered a stall, removed the gun from the box, loaded it, and put it in his waistband.   He confessed that, after he left the men's restroom, he shot the first people he encountered.   He admitted that he emptied his first magazine, then reloaded and shot until the second magazine was out of bullets.   SANTIAGO acknowledged his understanding that he had killed people in the attack, and that his actions in this regard were wrong.

9.       SANTIAGO is able to understand the nature and consequences of the proceedings against him and to assist in his defense.  At the time of the offenses charged in the Indictment, SANTIAGO was able to appreciate the nature and quality and the wrongfulness of his acts.

BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY

Date: 5/21/18  _____
RICARDO A. DEL TORO
ASSISTANT UNITED STATES ATTORNEY

Date: 5/21/18  _____ FOR :
LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY


I have read the Stipulated Statement of Facts set forth above.  I believe that the facts in the Stipulated Statement of Facts meet all the elements for the offenses of Violence at an International Airport Causing Death, in violation of Title 18, United States Code, Section 37(a)(1) (as charged in Counts 1 through 5 of the Indictment) and Violence at an International Airport Causing Serious Bodily Injury, in violation of Title 18, United States Code, Section 37(a)(1) (as charged in Counts 6 through 11 of the Indictment).  I agree that all the facts and representations set forth in the Stipulated Statement of Facts are true and would be proved with competent evidence at trial.

Date: 5/21/18  _____
ERIC COHEN
ATTORNEY FOR DEFENDANT

Date: 5/21/18  _____
HECTOR A. DOPICO
ATTORNEY FOR DEFENDANT

Date: 5/21/18  _____
ESTEBAN SANTIAGO-RUIZ
DEFENDANT

6